USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/23/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
:
CAROLYN ST. CLAIR-HIBBARD, :
                                   Plaintiff, :
: 18 Civ. 1148 (LGS) (KNF)
                -against- :
: **OPINION AND ORDER**
AMERICAN FINANCE TRUST, INC. et al., :
:
                                 Defendants. :
:
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

    Plaintiff Carolyn St. Clair-Hibbard brings this action against Defendants American Financial Trust, Inc. ("AFIN"), American Finance Advisors, LLC ("AF Advisors"), AR Global Investments, LLC ("AR Global"), Nicholas S. Schorsch and William D. Kahane. She alleges that AFIN violated § 14(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder. She alleges that AF Advisors, AR Global, Schorsch and Kahane violated § 20(a) of the Exchange Act. Plaintiff also asserts state law breach of fiduciary duty claims on behalf of herself and a class of AFIN's public shareholders.

    Defendants move to dismiss the Second Amended Complaint (the "Complaint" or "SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the motions are granted and the Complaint is dismissed.

## I. BACKGROUND[1]

    The facts below are taken from the Complaint, documents incorporated in the Complaint by reference, and matters of which judicial notice may be taken. *See TCA Television Corp. v.*

---

[1] After the parties submitted their respective briefs, Plaintiff filed a letter on March 13, 2019, withdrawing certain allegations of misrepresentations and omissions from the Complaint. They are SAC ¶¶ 4(d), (e), (f); 76; 77; 82(a), (b), (c), (d), (e); 88 and 89.

*McCollum*, 839 F.3d 168, 172 (2d Cir. 2016).  These facts are assumed to be true only for purposes of this motion.  *See Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).

A.  **The Parties**

AFIN is a real estate investment trust (REIT) incorporated in Maryland.  When the SAC was filed, AFIN was publicly registered but its shares were not publicly traded.  On July 18, 2018, almost three months after the SAC was filed, AFIN's stock commenced public trading on the NASDAQ.[2]

AFIN has no employees.  Instead, since its formation, AFIN has been "externally managed" by AF Advisors pursuant to an advisory contract.  AFIN relies on AF Advisors for all of its operational, managerial and financial activities.  AF Advisors is a Delaware limited liability company with its principal place of business in New York.  AF Advisors is an indirect wholly owned subsidiary of AR Global.  During the relevant time period, AFIN and AF Advisors shared legal counsel.

AR Global sponsors REITs, including AFIN.  Schorsch is AR Global's chairman and majority shareholder.  Kahane also owns a substantial number of AR Global shares.

Plaintiff is an Oregon resident who has owned shares in AFIN since at least 2015.  The Complaint alleges that as of October 2017, AFIN had hundreds of public shareholders who make up the putative class.

---

[2] The Court is entitled to take judicial notice of this fact.  *See Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 248 n. 11 ("[A] district court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment") (citing *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 166 n. 8 (2d Cir. 2000)).

B. **Actions Preceding the Third Advisory Agreement**

AFIN was organized in January 2013. It initially had a one-year advisory agreement with AF Advisors that was renewable for an unlimited number of successive one-year periods. Under the agreement, AFIN would have to pay a fee to terminate or not renew the agreement with AF Advisors only if AFIN was profitable to investors. The agreement did not permit AFIN to pay fees to AF Advisors for "internalization transactions," by which AFIN would take on management functions from AF Advisors to become self-managed. This provision was later eliminated by AR Global and AF Advisors. In a Form S-11, dated September 19, 2013, AFIN acknowledged that the external management structure created conflicts of interest on the part of AF Advisors that "could result in decisions that are not in the best interests of our stockholders."

In 2014, AR Global began to experience a decline in revenues and financial difficulties. To bolster its financial position, Schorsch, Kahane and AR Global embarked on a scheme to modify and extend AR Global's advisory contracts across its portfolio of REITs. These Defendants sought to secure steady long-term revenue by consolidating the REITs under two entities subject to lucrative twenty-year advisory contracts that were difficult to break because of onerous internalization/termination fees. One of these entities was AFIN.[3]

---

[3] Plaintiff's Opposition to Defendants' Motions to Dismiss alleges that Schorsch and Kahane failed to express their "self-interested motivation" in violation of § 14(a). This is not pleaded in the Complaint. It would be futile to allow Plaintiff to amend the Complaint to plead this allegation because proxy materials need not disclose hidden intentions if all material facts are disclosed. *See DoubleLine Capital LP v. Odebrecht Finance, Ltd.*, 323 F. Supp. 3d 393, 441 (S.D.N.Y. 2018) ("[I]n the absence of an express prior disclosure, a corporation has no affirmative duty to disclose uncharged, unadjudicated wrongdoing"); *see also Mendell v. Greenberg*, 927 F.2d 667, 674 (2d Cir. 1990), *modified* 938 F.2d 1528 (2d Cir. 1991) ("A proxy statement need not disclose the underlying motivations of a director or major shareholder *so long as* all objective material facts relating to the transaction are disclosed") (emphasis in original).

3

In April 2015, AFIN's Board of Directors approved amendments to the advisory agreement with AF Advisors. Three new provisions in the Second Amended and Restated Advisory Agreement ("Second Agreement") are relevant here. First, the Second Agreement established a twenty-year contract between AFIN and AF Advisors that would automatically renew for another twenty years except for cause. Second, the Second Agreement changed the primary basis for calculating an annual fee for AF Advisors from asset performance to asset acquisition. Third, the Second Agreement approved an annual base management fee of $18 million per year plus a portion of equity raised. The Second Agreement took effect after a shareholder vote on July 20, 2015.

C.  **The Third Advisory Agreement**

In mid-2016, AFIN began merger discussions with Retail Centers of America (RCA), a REIT that also has ties to Schorsch. Changes to the Second Agreement between AFIN and AF Advisors were proposed as consideration for the merger. The Third Amended and Restated Advisory Agreement ("Third Agreement") became effective when the merger was approved and made two changes to the contract between AFIN and AF Advisors that are relevant here.

First, the Third Agreement increased the annual fixed and variable fees AFIN pays AF Advisors. The fixed fee increased to over $20 million annually. New variable fees were based on the amount of consideration paid for acquisitions, the amount of equity raised after a public listing, and the amount of quarterly earnings.

Second, the Third Agreement included an option for AFIN's Board to elect to internalize management. This required one year's advance notice before the effective date of internalization, and if AFIN sought internalization in connection with a takeover by an outside company, the acquirer would have to pay AFIN the advisory fee that would have been payable

4

for one year after a vote to terminate. The Third Agreement includes a formula to determine the internalization fee, which public analysts estimate would cost AFIN over $125 million. This fee is approximately five to six times AFIN's annual average operating income from 2012 to 2016, and constitutes over 10% of AFIN's pre-merger stockholder equity and around 8% of AFIN's equity post-merger.

D.   **Proxy Materials and the Merger Vote**

In December 2016, AFIN filed a Joint Proxy Statement Prospectus regarding the proposed RCA merger. Over the next two months, AFIN also filed additional Form 425 disclosures regarding the merger. Together, these documents constitute the "Proxy Materials."

At an AFIN shareholder meeting on February 13, 2017, the merger with RCA was approved by a majority of AFIN shares. Shareholders owning only 58.4% of the total outstanding shares were present for the vote. The merger was approved by a bare majority representing 50.9% of total shares. The vote to approve the merger also approved the Third Agreement.

E.   **Procedural History**

Plaintiff commenced this action on February 8, 2018. The initial complaint asserted the same causes of action as are currently alleged -- violations of Section 14(a) of the Exchange Act and Sections 20(a) and (b) of the Exchange Act, as well as breach of fiduciary duty and aiding and abetting that breach -- except that all of the claims were asserted as putative class claims.

Plaintiff filed an amended complaint on February 23, 2018, which repleaded the federal claims only in Plaintiff's individual capacity and not on behalf of a class. On April 26, 2018, Defendants moved to dismiss the amended complaint under Rule 12(b)(6).

5

In response to the motions to dismiss, Plaintiff filed the SAC on May 25, 2018, with additional factual allegations asserting materially incomplete and misleading information in the Proxy Materials. When the briefing schedule was set, Plaintiff agreed not to submit another proposed amended complaint in response to Defendants' motions. The Honorable Robert W. Sweet heard oral argument on September 26, 2018. The case was reassigned on April 8, 2019.

## II. DISCUSSION

### A. Standard for Dismissal Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

On a Rule 12(b)(6) motion, all factual allegations alleged in the complaint are accepted as true. *See Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth Departments, Appellate Div. of the Supreme Court of New York*, 852 F.3d 178, 181–82 (2d Cir. 2017). "[A]ll inferences are drawn in the plaintiff's favor." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016) (quotation marks omitted). In considering a motion to

dismiss, courts "do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, . . . matters of which judicial notice may be taken,'" and other documents "integral to the complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "[W]hen any allegations contradict the evidence contained in the documents relied upon by a plaintiff, the documents control, and the Court need not accept the allegations contained within the complaint as true." *Zoulas v. New York City Dept. of Educ.,* 18 Civ. 2718, 2019 WL 4090057, at *11 (S.D.N.Y. Aug. 29, 2019) (quoting *Rozsa v. May Davis Group, Inc.*, 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002)).

B. **Section 14(a) Claim Against AFIN**

Count I alleges that AFIN violated § 14(a) and Rule 14a-9 by making false and misleading statements in the Proxy Materials and seeks rescission of the Third Agreement. The Complaint alleges that the Proxy Materials contain false and misleading information about (1) the internalization terms in the Third Agreement and (2) AFIN's prospect of going public. The Complaint alleges that Defendants fraudulently procured the shareholders' approval of the merger and Third Agreement, which has depressed the value of their AFIN common stock. Count I fails to state a claim.

In short, although Plaintiff alleges facts and risks about the merger and the accompanying advisory arrangement that might have caused a reasonable shareholder not to approve the transaction, the proxy statement contains extensive disclosures about those facts and risks and the shareholders did approve the transaction. As the Fourth Circuit concluded in affirming the dismissal of a related lawsuit by shareholders of the counterparty to the AFIN merger:

> The federal securities laws provide important protections against false and misleading statements and omissions. However, they do not provide guarantees of financial success. Likewise, they do not render carefully tailored warnings meaningless. In the end, words matter, including words in proxy statements.

7

> When the words of a proxy statement, like the ones in this case, are not false or misleading and contain tailored and specific warnings about the very omissions that are the subject of the allegations, those words render the claim for relief implausible. The words in the Proxy here do just that.

*Paradise Wire & Cable Defined Benefit Pension Plan v Weil*, 918 F.3d 312, 323 (4th Cir. 2019).

### a. Section 14(a) Pleading Requirements

Under section 14(a) of the Exchange Act, "[i]t shall be unlawful for any person . . . in contravention of such rules and regulations as the Commission may prescribe . . . to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security." 15 U.S.C. § 78n(a)(1). Rule 14a-9 prohibits any solicitation "made by means of any proxy statement . . . containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9(a). "To state a claim under Section 14(a) and Rule 14a-9, a plaintiff must allege that: '(1) a proxy statement contained a material misrepresentation or omission, which (2) caused plaintiff's injury, and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Fresno Cty. Employees' Retirement Assoc. v. comScore, Inc.*, 268 F. Supp. 3d 526, 557 (S.D.N.Y. 2017); *see also Bond Opportunity Fund v. Unilab Corp.*, 87 F. App'x 772, 773 (2d Cir. 2004) (summary order). "The complaint must also allege that defendants acted at least with negligence in making the misrepresentation or omission." *Furlong Fund LLC v VBI Vaccines, Inc.*, No. 14 Civ. 9435, 2016 WL 1181710, at *3 (S.D.N.Y. Mar. 25, 2016) (citing *In re J.P. Morgan Chase*, 363 F. Supp. 2d 595, 636 (S.D.N.Y. 2005). The PSLRA requires the complaint to specify each allegedly misleading statement, explain the reason (or reasons) that the statement is misleading, and, if an allegation is made upon information and belief, all facts with

8

particularity upon which that belief is formed. 15 U.S.C. § 78u–4(b)(1); *see also Fresno Cty*, 268 F. Supp. 3d at 557 ("While the Court of Appeals has not directly addressed the issue, courts have generally concluded that Section 14(a) allegations must identify with precision any misleading statements or omitted material facts pursuant to the PSLRA").

A statement or omission is material when there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available" to the market. *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp. P.L.C.*, 783 F.3d 383, 390 (2d Cir. 2015).[4] Relatedly, "[u]nder the bespeaks caution doctrine, 'alleged misrepresentations . . . are immaterial as a matter of law if it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language set out in the same'" material. *Rombach v. Chang*, 355 F. 3d 164, 173 (2d Cir. 2004) (citing *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002); *see also In re SunEdison, Inc. Securities Litig.*, 300 F. Supp. 3d 444, 464 (S.D.N.Y. 2018). "The touchstone of the inquiry is not whether isolated statements within a documents were true, but whether defendants' representations or omissions, considered together and in context, would affect the total mix of information and thereby mislead a reasonable investor regarding the nature of the securities offered." *Rombach*, 355 F.3d at 173 (citing *Halperin*, 295 F.3d at 357).

### b. The Internalization Terms

The Proxy Materials state that the merger provides AFIN "a path to internalization of services and termination of the AFIN Advisory Agreement" and discusses the divergent interests

---

[4] Though *IBEW* relates to § 10(b) of the Exchange Act, "the test of materiality under [Rules] 14a-9 and 10b-5 is the same." *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Sec. Act (ERISA) Litigation*, 757 F. Supp. 2d 260, 291 (S.D.N.Y. 2010).

9

of AF Advisors and AFIN shareholders. The Complaint alleges that these and related statements are materially misleading as regards the internalization process and fee because they fail to disclose what the cost of internalization would be; that the fee would likely discourage, if not prevent, any third-party acquisition of AFIN or the public listing of AFIN's shares; that the fee diminished the value of AFIN and its shares; and that material amounts of any takeover consideration would be diverted to AF Advisors and AR Global in the form of internalization/termination fees. The Complaint also alleges that the Proxy Materials were misleading because they disclosed the internalization fee formula without further information about its meaning. These allegations fail because of the extensive disclosures in the Proxy Materials about the internalization fee.

All of the contractual terms pertaining to the internalization fee are contained in the Third Agreement, which is annexed to the proxy statement. The agreement defines "Internalization Fee," with a formula to calculate the amount of the fee.[5] The Third Agreement also contains a heading titled "Payments to and Duties of Advisor Upon Termination," which includes a subheading called "Internalization," which provides when internalization can occur, and how the internalization fee can be paid.

The proxy statement references the Third Agreement and AFIN's right to internalize the advisory services with the payment of an internalization fee multiple times. The proxy statement includes the detailed formula to calculate the internalization fee three times: first, in a summary of the Third Agreement (with some paraphrasing to make it more understandable); second, in a

---

[5] "***Internalization Fee***" means an amount equal to (i) $15,000,000 . . . ; *plus* (ii) (x) 4.5 *multiplied by* [the annual management fee] if the effective date of Internalization is on or prior to December 31, 2028 or (y) 3.5 *multiplied by* the [annual management fee] if the effective date of termination is on or after January 1, 2029; plus (iii) 1.00% *multiplied by* (x) the Contract Purchase Price . . . and (y) without duplication, all Equity Proceeds . . . ."

detailed description of how the internalization mechanism and fee were first proposed and then negotiated (again paraphrasing what became the basic terms of the fee); and third, in a discussion of conflicts of interest where the Third Agreement is described. The formula is repeated again in the notes to the financial statements appended to the proxy statement under the heading "Related Party Agreements Executed in Connection with the Mergers." In substance, the fee is $15 million plus several times the amount of the annual advisory fee, plus 1% of new equity raised during the quarter preceding the internalization.

The proxy statement expressly warns about the impact on third party offers to purchase the company. Under the heading "***AFIN may terminate the [Third Agreement] in only limited circumstances***" [emphasis in original], the proxy statement again references the Third Agreement and internalization fee, and states, "The limited termination rights of the [Third Agreement] will make it difficult for AFIN to renegotiate [its] terms . . . or replace [AF Advisors] and may also discourage a third party from making an offer for the company at a premium price."

The proxy statement indicates that the AFIN Board approved the merger in part because "the amendment of the AFIN Advisory Agreement provides for a path to internalization of services and termination of the AFIN Advisory Agreement." The proxy statement also, however, includes among the negative factors considered by the RCA Board, "the 20-year term of the AFIN Advisory Agreement and the costs associated with terminating it by means of an internalization . . ."

These statements adequately disclose that the internalization fee would be extremely high and would be paid to AF Advisors, which the proxy statement discloses is a wholly owned subsidiary of AR Global. The proxy statement expressly warns that the internalization

11

provisions could harm AFIN's ability to undertake an actual internalization (i.e. terminate AF Advisors) and to attract any third-party to acquire AFIN. Implicit, but clear, from these disclosures is that the internalization provisions in the Third Agreement reduced the value of AFIN's shares. *See IBEW*, 783 F.3d at 390 (statements or omissions are material only where there is a substantial likelihood that a reasonable investor would view the disclosure "as having significantly altered the total mix of information made available").[6]

### c. AFIN'S Prospect of Going Public

The Complaint alleges that the Proxy Materials made misleading statements about the prospects of the public listing of AFIN stock and the resulting liquidity to the company and the shareholders that a listing would bring. The Complaint points to the representation in the proxy statement that AFIN had received clearance to list its common stock on the New York Stock Exchange and that AFIN intended to list AFIN common stock after the closing of the merger. The Complaint alleges that these statements are misleading because AFIN had no intention to list its shares publicly; indeed, AFIN was unable to list its shares as of the third quarter of 2015, but did not disclose these facts in the Proxy Materials. It is unclear the extent to which Plaintiff still relies on these allegations in support of its §14(a) claim, in light of the public listing and trading of AFIN shares after the SAC was filed. Plaintiff's supplemental briefing submitted at the

---

[6] The Complaint also alleges that the Proxy Materials failed to disclose any financial analyses of the Third Agreement even though such analyses were the subject of discussions prior to enacting the agreement. This allegation fails because there is a duty to disclose only what is necessary to make statements made not misleading, and the Complaint does allege what these analyses show and why they would have been material or necessary in light of the extensive disclosure about the Third Agreement in the Proxy Materials. *See Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245, 250 (2d. Cir. 2014) ("In general there is no duty to disclose a fact in the offering documents merely because a reasonable investor would very much like to know that fact"); *Fresno Cty. Employees' Retirement Assoc. v. comScore, Inc.*, 268 F. Supp. 3d 526, 561 (S.D.N.Y. 2017) ("An omission is actionable under federal securities laws only when the defendant is subject to a duty to disclose the omitted facts").

Court's request and after public trading commenced focuses exclusively on alleged misstatements regarding the internalization fee and the Third Agreement, which are discussed above. In any event, the "going public" claim is without merit.

The Complaint alleges that the Proxy Materials failed to disclose AFIN's inability to list its shares *since* the third quarter of 2015. The proxy statement and documents of which the Court takes judicial notice show that this allegation is incorrect. As the Complaint notes, on November 16, 2016, the SEC directed AFIN to "clarify that you have been unable to list since the third quarter of 2015." The final proxy statement clarifies that AFIN's Board decided against listing in September 2015 and later reapplied for and received clearance to list its shares in September 2016.

Subsequent events belie the allegation that AFIN had no intention to list its shares. Plaintiff acknowledges that the stock was listed and began trading in July 2018. The lapse in time between the merger and listing also is not actionable. The proxy statement repeatedly states that "there can be no assurance as to when or if AFIN common stock will commence trading on the exchange," and further warns that "[t]he AFIN Board has not yet determined when it will request that the AFIN common stock be listed and commence trading and any decision with respect to the timing of listing would be based on market conditions and other facts," and that "there can be no assurance that our shares of common stock will be listed. No public market currently exists, or may ever exist, for shares of our common stock and our shares are, and may continue to be, illiquid." Given these cautionary statements and the eventual listing of the AFIN stock, the alleged misstatements regarding AFIN's intention of going public are not actionable. *See Rombach*, 355 F.3d at 173 (citing *Halperin*, 295 F.3d at 357) ("The touchstone of the inquiry [when there is cautionary language in the disclosure] is . . . whether defendants' representations

or omissions, considered together and in context, would affect the total mix of information and thereby mislead a reasonable investor regarding the nature of the securities offered").

C. **Section 20(a) Claim Against AF Advisors, AR Global, Schorsch and Kahane**

Control person liability attaches under Section 20(a) of the Exchange Act only where a plaintiff has shown that a primary violation by a controlled person occurred. *See Rombach*, 355 F.3d at 177-78. Here, Plaintiff's Complaint fails to allege a primary violation of the Exchange Act. Accordingly, the Complaint does not state a claim under Section 20(a).

D. **State Breach of Fiduciary Duty and Aiding and Abetting Claims[7]**

The Complaint alleges that the defective Proxy Materials constituted a class-wide breach of fiduciary duties undertaken by AF Advisors in the Second Agreement and Third Agreement, as aided and abetted by AR Global, Schorsch and Kahane. The theory of the claims is that AF Advisors breached its contractual obligation to act in the best interest of AFIN and its shareholders, and not for its own benefit, (i) when AF Advisors negotiated changes to the Third Agreement that increased AF Advisors' compensation and imposed the internalization fee, and (ii) when AF Advisors disseminated a proxy statement on June 1, 2015, seeking approval of a 20-year non-cancellable term in the Second Agreement. The Complaint fails to state a claim for breach of fiduciary duty.[8]

The claim is based on a contractually created fiduciary duty in the Second and Third Agreements. Both agreements prescribe AF Advisors' rights and responsibilities as a service

---

[7] The Court has subject matter jurisdiction over the state law claims pursuant to the Class Action Fairness Act. The parties do not dispute the Court's jurisdiction over the claims.

[8] As noted below, Maryland law does not recognize a common law claim for breach of fiduciary duty. *See George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay*, 14 A.3d 1193, 1219 (Md. Ct. Spec. App. 2011) ("[A]n alleged breach of fiduciary duty may give rise to a cause of action, but it does not, standing alone, constitute a cause of action"). If Maryland law applies, the breach of fiduciary claim fails for that reason as well.

14

provider to AFIN.  Accordingly, the fiduciary duty stated in these agreements must relate to AF Advisors' responsibilities when operating as a service provider to AFIN.  The Complaint does not allege that AF Advisors failed in performing those duties, but rather in negotiating the agreements that created those duties.  The contracts do not impose a duty on AF Advisors that pre-dates the creation of the contracts, specifically the duty to create a contract with the least desirable terms for AF Advisors.  Similarly, in an ERISA case, the Second Circuit held that when a service provider that has no relationship to an ERISA plan is negotiating a contract with that plan, the service provider "is not an ERISA fiduciary with respect to the terms of the agreement for [its] compensation."  *F.H. Krear & Co. v. Nineteen Named Trs*., 810 F.2d 1250, 1259 (2d Cir. 1987); *accord Hannan v. Hartford Fin. Services, Inc.,* 688 Fed. App'x 85, 89 (2d Cir. 2017) (summary order).  The rationale for this rule is that a service provider in such a situation "has no authority over or responsibility to the plan and presumably is unable to exercise any control over the trustees' decision whether or not, and on what terms, to enter into an agreement."  *Krear*, 810 F.2d at 1259.

Conversely, fiduciary responsibility would lie if AF Advisors had the ability to dictate the terms of the Second and Third Agreements.  *See id.*  Allegations in the SAC and documents it incorporates by reference show that AF Advisors did not have control over the terms of either agreement, superseding the Complaint's conclusory allegations to the contrary.  According to the June 2015 proxy statement seeking approval of the Second Agreement, that agreement was presented to and approved by the three independent directors on AFIN's four-member Board of Directors and then approved by AFIN's shareholders.  The Third Agreement, as a part of the merger, was approved by a Special Committee at both companies, each comprised of only the independent directors of AFIN and RCA.  The detailed history in the proxy statement for

15

approval of the merger (and with it the Third Agreement) shows that the AFIN Special Committee and the RCA Special Committee had extensive negotiations with AF Advisors about the terms of the Third Agreement with AF Advisors. The merger of AFIN and RCA, with the accompanying Third Agreement, was approved by AFIN's shareholders. The SAC does not plead any facts to the contrary, and accordingly, the breach of fiduciary claim against AF Advisors is dismissed.

Because the primary claim does not survive, the claim against the remaining Defendants alleging aiding and abetting also does not survive. Under both New York and Maryland law, an aiding and abetting action can survive only where an underlying violation has occurred.[9] *See Schandler v. New York Life Ins. Co.*, No. 9 Civ. 10463, 2011 WL 1642574, at *13 (S.D.N.Y. Apr. 26, 2011) ("Under New York law, to state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must allege that there was 'a breach by a fiduciary of obligations' to the plaintiff") (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006)); *Schlossberg v. Nadel*, No. CV PX 16-100, 2016 WL 4205772, at *5 (D. Md. Aug. 10, 2016) ("[B]ecause Maryland does not recognize breach of fiduciary as a standalone cause of action, plaintiff cannot aid and abet a non-existent claim"). As the Complaint fails to state a claim for AF Advisors' breach of fiduciary duty, the Complaint fails to state a claim against AR Global, Schorsch and Kahane for aiding and abetting.

An additional basis for dismissal is that Plaintiff and the purported class lack standing to pursue these breach of fiduciary duty claims as derivative claims, having neither made a demand

---

[9] The parties dispute which state law governs. Defendants suggests that Maryland law (where AFIN is incorporated) governs. Plaintiff suggests that New York law (whose law governs the Third Agreement) governs. As the Complaint fails to state a claim under either law, the choice of law issue is not addressed.

on AFIN's Board nor adequately alleged demand futility. *See Oliveira v. Sugarman*, 152 A.3d 728, 737 (Md. 2017) ("Because a derivative lawsuit intrudes upon the board of directors' managerial control of the corporation, shareholders are required to first make a demand that the board take action before initiating a derivative suit"); *Bansbach v. Zinn*, 801 N.E. 2d 395, 400 (N.Y. 2003) ("[A] plaintiff shareholder [bringing a derivative suit must] set forth in the complaint—with particularity—an attempt to secure the initiation of such action by the board or the reasons for not making such effort") (citing Business Corporation Law § 626(c)); *see also Barone v. Sowers*, 128 A.D. 3d 484, 484 (1st Dep't 2015) (same).

1. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted. The Court of Clerk is respectfully directed to close the motions at Docket No. 43 and 46 and close the case.[10]

Dated: September 23, 2019
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

---

[10] Plaintiff has already filed three successive complaints in this action, one of which was in response to Defendants' motion to dismiss for failure to state a claim. Given the prior efforts to replead and the nature of the SAC's deficiencies explained in this opinion, any attempt to replead would be futile, and leave to replead is denied. See *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 163 (2d Cir. 2016).